UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JIMENEZ,<br><br>           Petitioner,<br><br>      v.<br><br>TAMMY CAMPBELL, Warden,<br><br>           Respondent. | No. 1:24-cv-00840-KES-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[21-DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented in this action by Aaron Spolin, Esq. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. As discussed below, the Court finds the petition to be without merit and recommends it be **DENIED.**

**I.     PROCEDURAL HISTORY**

On December 23, 2020, a Madera County jury found Petitioner guilty of four counts of sexual acts with a child ten years old or younger (Cal. Penal Code § 288.7(b)); two counts of lewd and lascivious acts with a child under the age of fourteen (Cal. Penal Code § 288(a)). People v. Jimenez, 2022 WL 17334691 (Cal. Ct. App. 2022); (Doc. 12-1 at 246[1]). On January 25, 2021, Petitioner was sentenced to an indeterminate prison term of 90 years to life. Id.

---
[1] Docket citations are to ECF-imposed pagination.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District (hereinafter "Fifth DCA"). On November 30, 2022, the Fifth DCA, *inter alia*, reduced the convictions for two counts of Cal. Penal Code § 288.7(b) to the lesser included offense of sexual penetration of a minor in violation of Cal. Penal Code § 289(h). Jimenez, 2022 WL 17334691, at *9. The appellate court remanded the matter to the sentencing court for resentencing. Id. Petitioner did not petition for review of the appellate court's decision.

On March 20, 2023, the Madera County Superior Court resentenced Petitioner to an indeterminate term of sixty years to life plus a consecutive five-year term. (Doc. 12-13 at 1-4.)

On July 22, 2024, Petitioner filed a petition for writ of habeas corpus in this Court. (Doc. 1.) Respondent filed an answer on March 20, 2025. (Doc. 13.) Petitioner filed a traverse on April 7, 2025. (Doc. 14.)

## II. FACTUAL BACKGROUND[2]

**A. Jimenez's offenses against Kassandra Doe (counts 1 and 2)**

Kassandra Doe was born in October 2001. It appears that Jimenez is the former husband of Kassandra's aunt.

On one occasion when Kassandra was between the ages of seven and 10, she and her family visited Jimenez's home. At one point during the visit, Jimenez put his hands into Kassandra's pants and touched her clitoris for approximately one minute.

On more than one occasion after this incident, Jimenez picked Kassandra up and rubbed her vagina over her clothing in a circular motion. Jimenez concedes the trial evidence showed that "[o]n at least one occasion, Kassandra tried to push [him] away."

**B. Jimenez's offenses against Maryann Doe (counts 4 and 5)**

Maryann Doe was born in October 2003. On the date of the incident described below, Jimenez was Maryann's godfather.

In 2008, Maryann was at Jimenez's home for a family gathering. After Maryann started to

---

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts in Jimenez, 2022 WL 17334691, at *2). See Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

fall asleep on a couch in the living room, Jimenez offered to let Maryann sleep in his room. Jimenez then led Maryann to his room. Next, Maryann laid down, and Jimenez pulled her pants and underwear down. Jimenez admits that evidence introduced at trial showed "he rubbed her vagina with one hand and then kissed her vagina's exterior . . . ."

### C. Jimenez's offenses against Maria Doe (counts 6 and 7)

Maria Doe was born in October 1996. It appears that Jimenez is the former husband of Maria's aunt.

When Maria was four or five years old, she was playing outside in the backyard of her family's home. Jimenez called out to Maria. Maria approached Jimenez, and Jimenez lifted her off the ground. Jimenez concedes the trial evidence shows that, "[w]ith the fingers of his right hand, [Jimenez] touched [Maria's] vagina skin to skin for one to two minutes." Jimenez then put Maria back down, and she continued to play.

The next incident occurred at Jimenez's home when Maria was approximately six years old. On that occasion, Maria was playing outside with her sister and cousins. Jimenez picked Maria up and rubbed her vagina for several minutes. Jimenez put Maria back down, and she continued to play.

On each of these two occasions, Jimenez touched the inner lips of Maria's vagina.

## III.     DISCUSSION

### A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Madera County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

1  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases
2  filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA
3  and is therefore governed by its provisions.

       B.      Legal Standard of Review

       A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

       Under Section 2254(d)(1), a state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).  This court looks to "Supreme Court holdings at the time of the state court's last reasoned decision" as "the source of clearly established Federal law for the purposes of AEDPA."  Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005). A Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court "squarely addresses the issue" in the case before the state court. Wright v. Van Patten, 552 U.S. 120, 125–26 (2008) (per curiam) (concluding that a state court had not unreasonably applied federal law to a claim of prejudice under Strickland where the logic of petitioner's argument would have required the extension of the Supreme Court's inherent prejudice doctrine to a new context); Carey v. Musladin, 549 U.S. 70, 76–77 (2006) (same). While "[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt," Yarborough v. Alvarado, 541 U.S. 652, 666 (2004), "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." Murdoch v. Castro, 609 F.3d 983, 991

4

(9th Cir. 2010). "'[I]f a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'" White v. Woodall, 572 U.S. 415, 426 (2014) (quoting Yarborough, 541 U.S. at 666).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). The petitioner "must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" Shinn v. Kayer, 592 U.S. 111, 118 (2020) (quoting Virginia v. LeBlanc, 582 U. S. 91, 93 (2017) (*per curiam*)). Rather, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law *beyond any possibility of fairminded disagreement*." Richter, 562 U.S. at 103 (emphasis added); see also Kayer, 592 U.S. at 118. In other words, so long as fairminded jurists could disagree with each other as to whether the state court was correct, the state court decision is not unreasonable under AEDPA. Congress "meant" this standard to be "difficult to meet." Richter, 562 U.S. at 102.

Section 2254(d)(2) pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). The federal habeas court must give "substantial deference" to the state court. Brumfield v. Cain, 576 U.S. 305, 314 (2015). "Factual determinations by state courts are presumed correct" and the petitioner bears the burden of overcoming the presumption with "clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340; 28 U.S.C. § 2254(e)(1). A state court's factual finding is unreasonable

5

1    when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries,

2    114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*,

3    Maddox v. Taylor, 543 U.S. 1038 (2004). If "'[r]easonable minds reviewing the record might

4    disagree' about the finding in question, '. . . that does not suffice'" to prove the lower court's

5    factual determination was unreasonable. Wood v. Allen, 558 U.S. 290, 301 (2010) (alteration in

6    original) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

7          To determine whether habeas relief is available under § 2254(d), the federal court looks to

8    the last reasoned state court decision as the basis of the state court's decision. See Ylst v.

9    Nunnemaker, 501 U.S. 979, 803 (1991); Andrews v. Davis, 994 F.3d 1042, 1107 (9th Cir. 2019)

10   (en banc). "[A]lthough we independently review the record, we still defer to the state court's

11   ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

12         The prejudicial impact of any constitutional error is assessed by asking whether the error

13   had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

14   Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)

15   (holding that the Brecht standard applies whether or not the state court recognized the error and

16   reviewed it for harmlessness).

17         In a case where the state court decided the petitioner's claims on the merits but provided

18   no reasoning for its decision, the federal habeas court conducts "an independent review of the

19   record . . . to determine whether the state court [was objectively unreasonable] in its application

20   of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002). "[A]lthough

21   we independently review the record, we still defer to the state court's ultimate decisions." Pirtle

22   v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

23       C.    Review of Petition

24         Petitioner contends he was denied his federal due process rights under the Fifth, Sixth and

25   Fourteenth Amendments because of trial counsel's ineffectiveness in the following instances: 1)

26   Counsel failed to investigate, consult with, and adduce testimony of a criminal psychologist, a

27   child sex crimes expert, and a child witness expert; 2) Counsel failed to call witnesses Hector

28

6

Carranza, Jose Tafoya, and Gloria Tafoya; 3) Counsel failed to file a Pitchess[3] motion; 4) Counsel failed to hire a competent private investigator; and 5) Counsel failed to meaningfully communicate with Petitioner and ensure there was an interpreter present for meetings and relevant events.

### 1. Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed at trial. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v.

---

[3] Pitchess v. Superior Court, 11 Cal.3d 531 (1974).

Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v. Gentry, 540 U.S. 1, 5 (2003).  Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

### 2. Analysis – Failure to Investigate and Obtain Experts

Petitioner claims defense counsel failed to investigate, consult with, and adduce testimony of a criminal psychologist, a child sex crimes expert, a child witness expert, and a DNA expert. It is unknown whether defense counsel consulted with potential expert witnesses, and if so, what his investigation revealed and why he did not seek to introduce testimonial evidence from such experts.  Petitioner's allegation that defense counsel did not consult with any such expert is purely speculative. Moreover, Petitioner proffers no evidence in the form of an affidavit or declaration from an expert who would have testified, what that testimony would have been, and how it would have affected the outcome. This is fatal to Petitioner's claim.  See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir.1997) ("[s]peculation about what an expert could have said is not enough to establish prejudice"); Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995) (citing James v. Borg, 24 F.3d 20, 26 (9th Cir.1994)) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [the petitioner] cannot meet the prejudice prong of the Strickland test."); Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (lack of affidavit from "alleged witness" fatal to claim of ineffective assistance for failure to call said witness).

### 3. Analysis – Failure to Call Witnesses

Petitioner alleges defense counsel was ineffective in failing to call Hector Carranza, Jose Tafoya, and Gloria Tafoya. Petitioner claims he advised counsel of these potential witnesses and states these witnesses would have testified that Petitioner was never alone with the victims. He

8

1 claims this divested him of his opportunity to establish a concrete alibi allegation.

2 Again, aside from Petitioner's self-serving declaration, he presents no evidence that counsel did not investigate these witnesses, or if not, whether he was aware of them. Further, he provides no evidence in the form of affidavit from these alleged alibi witnesses that they would have provided helpful testimony for the defense. Id. There is also no reasonable likelihood these witnesses would have altered the outcome, since Petitioner himself admitted to officers he would play with the victims, and that the playing may have gone too far. (Doc. 12-7 at 73-84, 86-87.)

### 4. Analysis – Failure to File Pitchess Motion

Petitioner next claims defense counsel failed to file a Pitchess motion which would have revealed all relevant officer misconduct. This claim is also completely speculative.

Petitioner offers no evidence of any misconduct by any officer involved in the case. Petitioner fails to identify any evidence his trial counsel would have gleaned had he filed a Pitchess motion, and his mere speculation regarding evidence possibly contained in the officers' personnel files is manifestly insufficient to demonstrate he was in any manner prejudiced by trial counsel not filing a Pitchess motion.

### 5. Analysis – Failure to Hire Competent Investigator

Petitioner contends trial counsel failed to hire a competent private investigator to assist with investigating the following people and things which would have revealed readily available evidence of Petitioner's innocence: "Gloria Carranza, Dulce Carranza, Edelmire Carranza, Sergeant Alicia Keiser, Officer Marcy Noriega, John Rosel, Officer Mike Chamberlain, Josie Roderick, and Maria's residence on Road 29 in Madera." (Doc. 1-1 at 21; citations omitted.)

The claim fails for the same reasons previously stated. Petitioner's claim is pure speculation. There is no evidence in the record that counsel did not investigate these individuals, and Petitioner fails to offer proof of any exculpatory evidence that would have been discovered. Petitioner thus fails to demonstrate any prejudice. See Wood v. Bartholomew, 516 U.S. 1 at 6 (1995) (habeas relief is unavailable for claims based on mere speculation).

### 6. Analysis – Failure to Meaningfully Communicate with Petitioner

Petitioner states his first language is Spanish and he comprehends and speaks little

9

1    English. He claims defense counsel was ineffective in failing to meaningfully communicate with
2    him, depriving him of the opportunity to participate in the formulation of a viable defense. He
3    claims counsel should have ensured an interpreter was present at all meetings and relevant events.
4         Respondent points out that Petitioner's contention is contradicted by his own declaration.
5    Petitioner states he "asked [his] attorney to investigate, interview, and call Hector 'Teto' Carranza
6    and Jose and Gloria Tafoya who would have testified that I was never alone with the
7    complainants." (Doc. 1-2 at 2.) He further states, "Trial counsel failed to honor any of my above
8    requests or investigate any of the evidence I presented." (Doc. 1-2 at 3.) Moreover, Petitioner fails
9    to show any prejudice. As discussed above, Petitioner's claims are completely speculative; he
10   proffers no evidence that could have been presented at trial or show how the evidence would have
11   altered the outcome.
12        In sum, Petitioner fails to show counsel's performance fell below an objective standard of
13   reasonableness or that there was a reasonable probability that, but for counsel's unprofessional
14   errors, he would have prevailed at trial. Strickland, 466 U.S. at 687-88, 694.  He also fails to show
15   that the state court rejection of his ineffective assistance of counsel claims were contrary to, or an
16   unreasonable application of, Supreme Court precedent, or that the state court based its decision on
17   an unreasonable determination of the facts. The petition should be denied.

18   **IV.    RECOMMENDATION**

19        Based on the foregoing, the Court RECOMMENDS that the Petition for Writ of Habeas
20   Corpus be DENIED with prejudice on the merits.
21        This Findings and Recommendation is submitted to the United States District Court Judge
22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the
23   Local Rules of Practice for the United States District Court, Eastern District of California.  Within
24   twenty-one (21) days after being served with a copy of this Findings and Recommendation, a
25   party may file written objections with the Court and serve a copy on all parties. Id. The document
26   should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall
27   not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not
28   consider exhibits attached to the Objections. To the extent a party wishes to refer to any

exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **May 2, 2025**                     /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE